IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM R. CARROLL, et. al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL CASE NO.: MJG-02-CV-2084 |
| BENJAMIN J. MARTIN, et. al., | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF CONTRIBUTORY NEGLIGENCE**

William R. Carroll, Plaintiff, by and through his attorneys, Henry L. Belsky, and Schlachman, Belsky & Weiner, P.A., hereby respectfully requests, pursuant to F.R.C.P. Rule 56, that this Honorable Court grant Plaintiff's Motion for Partial Summary Judgment on the Issue of Contributory Negligence, and in support of, states the following:

**I.      Introduction**

This case arises out of an accident wherein Defendant struck Plaintiff while Plaintiff was riding his bicycle southbound on Route 27 in Montgomery County, Maryland. It is Plaintiff's contention that there is no issue of contributory negligence as his actions were both proper and reasonable under the circumstances.

**II.     Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where, "there is no genuine issue as to material fact and [...] the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must grant summary judgment in

a party's favor if, "the evidence [is] so one-sided that one party must prevail as a matter of law." Id., 477 U.S. at 268. Summary judgment is not appropriate when there exists "an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Mere speculation may not stave off a properly supported motion for summary judgment. *See*, Anderson, 477 U.S. at 252; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). To survive a motion for summary judgment a party must demonstrate that specific, material facts exist which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In ruling on such a motion, the court assumes that all of the non-moving party's evidence is worthy of belief, and award all justifiable inferences in favor of the non-moving party. Anderson, 477 U.S. at 252; Pulliam Investment Company v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" can the court properly grant a motion for summary judgment. Matsushita Elec. Industr. Co. v. Zenith Radio Corp.. 475 U.S. 574, 587 (1986).

A motion for summary judgment can be supported and based upon a party's deposition. Hoover v. Switlik Parachute Co., 663 F.2d 964, 967 (9th Cir. 1981) Depositions, made under oath by a party, are a proper means of placing before the court facts to be considered in ruling on a motion for summary judgment. Id. In addition, because a party's deposition meet the requirements made for affidavits under Rule 56, they are, in essence, equivalent to affidavits. Id.

**III.    Facts**

On January 16, 2001, at approximately 6:30 a.m., Plaintiff, William R. Carroll (hereinafter "Carroll"), was riding his bicycle on the southbound shoulder of Route 27. At the same time, Defendant, Benjamin J. Martin (hereinafter "Martin"), was driving a white box truck southbound on Route 27 in the course of his employment as a truck driver for Lamtech, Inc. (hereinafter "Lamtech"). After crossing the intersection of Route 27 and Skylark Road, Mr. Carroll, was struck by Defendant's truck.[1]

At deposition, Mr. Carroll testified that he routinely rode a hybrid Bianchi Advantage bicycle to work on the shoulder of Route 27. (See Deposition of William R. Carroll attached hereto as Exhibit A, pp. 8-9, p. 17). His bicycle was equipped with battery powered headlights on the front and rear, which were both switched on at the time of the accident, and reflective strips attached to the back fender. (Exhibit A, pp. 11-12, p. 25). Additionally, Mr. Carroll stated that at the time of the accident, he was wearing an orange safety vest also fitted with reflective strips along with a white plastic helmet. (Exhibit A, p. 24). Although Mr. Carroll could not remember exactly where he was at the time of impact, he testified that at the time of the accident, "I would have been on the shoulder because I don't ride on the road." (Exhibit A, pp. 18-19).

Additionally, Raymond Curtis (hereinafter "Curtis"), a witness to this accident, at deposition testified that he normally drove southbound on Route 27 to work. (See Deposition of Raymond Curtis attached hereto as Exhibit B, p. 4). On the day of this accident, Mr. Curtis was following Defendant's truck when he observed Plaintiff and his bicycle "tumbling" off to the side of the

---

[1]. Although it is understood that the white box truck driven by Defendant did not belong to him personally, but to the Lamtech., for the purposes of brevity, Plaintiff will refer at times to this vehicle as "Defendant's truck" or "Defendant's vehicle."

roadway.  (Exhibit B, pp. 9-10)  At this point, Defendant stopped his truck and pulled over to the side. Id.  Mr. Curtis further testified that Defendant's truck never changed direction or vary in its lane of travel.  Id.  However, Mr. Curtis also testified that he did not see the point of impact between Defendant's truck and Plaintiff's bicycle.  (Exhibit B, p. 31).

Additionally, Mr. Curtis testified that everyday, prior to the accident, he would drive by the location of the accident and could see that the pavement on the shoulder of the site of the accident was crumbled.  (Exhibit B, pp. 27-28).  Mr. Curtis also stated that "just about everyday for a number of years" on his drive to work he would observe Plaintiff riding his bicycle with reflectors on the shoulder of Route 27.  (Exhibit B, pp. 26-27 and p. 32).  On these occasions, when observing Plaintiff riding his bicycle, Mr. Curtis further stated that he never had a problem seeing him.  (Exhibit B, p. 26).

On the day and location of the accident, Mr. Curtis observed, on the shoulder extending to the white line dividing the shoulder from the travel lane, an area of patched, crumbled pavement that would have prevented an individual from riding a bicycle through it.  (Exhibit B, pp. 16-17).  As an avid cyclist himself who had, on numerous occasions traveled on Route 27, Mr. Curtis stated that he would not drive a bicycle over broken pavement, "because you can't keep a bicycle upright driving on broken pavement."  (Exhibit B, p. 28).  Moreover, when cycling on Route 27 at these broken pavement patches, he would normally drive around them.  (Exhibit B, p. 28).

Mr. Martin also testified via deposition that on the day of the accident he was traveling southbound on Route 27 in the course of his employment as a truck driver.  (See Deposition of Benjamin Martin, attached hereto as Exhibit C, p. 18). Mr. Martin further testified that he did not see Mr. Carroll until the moment of impact and could not identify whether Mr. Carroll was in the shoulder

or travel lane of Route 27.  Mr. Martin contended that he, "was looking at the car in front," of his vehicle prior to impact.  (Exhibit C, pp. 16-17).  The only damage to Mr. Martin's truck, after the accident, was a bent mirror frame attached approximately six to eight inches from the right side door.  (Exhibit C, pp. 23-24).  To the best of his knowledge, this portion of his vehicle was what appeared to strike Mr. Carroll.  Id. (Exhibit C, pp. 15-16).

In a police report taken immediately following the accident Mr. Martin admitted liability and had narrated to a police officer that, "he had his eyes off the road for a very short time, and when he looked up, [Mr. Carroll] was at his right front bumper."  (See Police Report attached hereto as Exhibit D).  Additionally, Mr. Martin had made statements to Mr. Curtis, also immediately following this accident and had stated that, "I must have run off the road and hit him."  (See Exhibit B, p. 20 and p. 25).  Mr. Curtis had observed that at the time Mr. Martin had made these statements he was in an excited state as he, "was in shock," (Exhibit B, p. 20), and was, "really shaken."  (Exhibit B, p. 25).

Mr. Martin also testified that he notified his supervisor of this incident directly after the accident by telephone.  (Exhibit C, p. 9).  Representatives from Lamtech then called him and conducted a telephone conference whereby Mr. Martin relayed the events of this incident.  Id.  Plaintiff has been denied an opportunity to review any documents relating to this conversation and during Plaintiff's deposition of Brent Keener, a Lamtech corporate designee, Mr. Keener was instructed by his attorney not to answer any questions relating to the substance of the January 16, 2001 conversation between Lamtech and Mr. Martin.  Accordingly, Plaintiff plans to file a Motion to Compel on these issues.  Approximately three days after the date of this conversation, Mr. Martin was terminated from his employment at Lamtech.  (Exhibit C, p. 10).

Mr. Martin also testified that as a consequence of this accident, he had been issued a traffic citation for careless driving.  (Exhibit C, p. 12).  Instead of proceeding to traffic court, however, Mr. Martin elected to pay the fine outlined in the citation.  (Exhibit C, p. 12).

**IV.    Arguments**

In questions surrounding issues of contributory negligence, federal courts in diversity of citizenship cases must apply local law.  *See*, Hanna v. Plumer, 380 U.S. 460, 470 (1965); Palmer v. Hoffman, 318 U.S. 109, 117 (1943); Perry v. McVey, 345 F.2d 897, 901 (4th Cir. 1965).  To this end, Maryland Courts have consistently held that contributory negligence, "occurs when the injured party acts or fails to act in a manner consistent with the knowledge or appreciation, actual or implied, of the danger or injury involved."  Campbell v. Montgomery County Bd. of Educ., 73 Md. App. 54, 64, 533 A.2d 9, 14 (1987), *see also*, Smith v. Warbasse, 71 Md. App. 625, 627, 526 A.2d. 991, 992 (1987).  Moreover, in order for a plaintiff to be found contributorily negligent, his or her conduct must either be an intentional and unreasonable exposure to the danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or that his or her conduct falls short of the standard to which the reasonable person should conform in order to protect themselves from injury.  Myers v. Estate of Alessi, 80 Md. App. 124, 132-33, 560 A.2d 59, 63, cert. denied, 317 Md. 640, 566 A.2d 101 (1989).

Ordinarily, any question of contributory negligence is an issue of fact to be determined by a jury. Faith v. Keefer, 127 Md. App. 706, 746, 736 A.2d 422, 444 (1999), *see also*, McQuay v. Schertle, 126 Md. App. 556, 730 A.2d 714 (1999).  However, if the evidence showed some prominent and decisive act directly contributing to the accident, and of such a character as to leave no room for difference of opinion thereon by reasonable minds, then a determination of contributory negligence becomes a

question of law.  Wright v. Hixon, 42 Md. App. 448, 400, A.2d. 1138 (1979); McSlaarow v. Walters, 56 Md. App. 151, 467 A.2d 196 (1983).

Contributory negligence as a matter of law requires a finding that the plaintiff's negligent act in question must be, "prominent, decisive and one about which ordinary minds would not differ in declaring it to be negligence." Faith, 127 Md. App. at 746-747, 736 A.2d at 444, *citing*, Yockel v. Gerstadt, 154 Md. 188, 140 A. 40 (1927).  The standard of care to be applied is whether an ordinary prudent person under similar circumstances would have behaved consistently.  Id.  Yet even if the negligent act is a error in judgment, this alone does not make the act negligent if an ordinarily prudent person may have made the same error.  Faith, 127 Md. App. at 746-747, 736 A.2d at 444, *citing*, Sanders v. Williams, 209 Md. 149, 120 A.2d 397 (1955).

In the instant matter, there is no indication that Plaintiff was contributory negligent in this accident.  Annotated Code of Maryland, Transportation Article, § 21-1205(a) states that, "each person operating a bicycle [...] on a roadway shall ride as near to the right side of the roadway **as practical and safe** [...]." (Emphasis added).  Further, Transportation Article § 21-1205.1(b)(1)(iii) adds that when riding on a roadway with a shoulder paved to a smooth surface, "a person operating a bicycle or a motor scooter shall use the bike lane or shoulder and may not ride on the roadway, except [...] when reasonably necessary to leave the bike lane or shoulder to avoid debris or other hazardous condition."

From the deposition testimony presented, it is clear that Plaintiff was struck by Defendant either properly riding his bicycle in the southbound shoulder of Route 27 or, upon observing an obstacle on the shoulder, consisting of unsafe and unpassable crumbled pavement, moved briefly into the travel lane.  In either event, Mr. Carroll was abiding by the statutorily mandated rules of the road by riding his bicycle

either as close as possible to the right side of southbound Route 27.  Even if Mr. Carroll had moved briefly into the travel lane, he did so in direct response to the unsafe and hazardous condition of the shoulder which was previously observed by Mr. Curtis and which was his right under Transportation Article § 21-1205.1(b)(1)(iii).

Moreover, Plaintiff was familiar with the roadway and his bicycle.  The bicycle itself was always equipped with all proper safety and reflective gear and Plaintiff routinely wore a white helmet and reflective clothing while riding.  All of which would also have made him visible to all other vehicles on the roadway, including Defendant.  Further, Plaintiff testified that it was his habit and custom to ride only on the shoulder of Route 27.  Mr. Curtis also stated that virtually everyday he would observe Plaintiff riding his bicycle with reflectors on the shoulder of Route 27.  Such testimony of Plaintiff's habits "is relevant to prove that the conduce of the person [...] on a particular occasion was in conformity with the habit or routine practice."  Maryland Rule 5-406.  As such, although Mr. Carroll could not remember exactly where he was at the time of impact, evidence of his routine use of the roadway compounded with his testimony that, "I would have been on the shoulder because I don't ride on the road," only further supports Plaintiff's contention that he was not negligent as it was his custom and habit to ride only on the shoulder. (Exhibit A, pp. 18-19).

Further, Mr. Curtis' testimony that, as an avid cyclist himself who had on previous occasions traveled the identical stretch of southbound Route 27, he would not normally drive over broken pavement but would drive around them, creates an inference that any action taken by Plaintiff to avoid a patch of broken pavement would have been consistent with a reasonable person's behavior. As such Mr. Carroll's conduct was neither an intentional and unreasonable exposure to the danger created by the

defendant's negligence, of which danger the plaintiff knows or has reason to know, nor did his conduct fall short of the standard to which the reasonable person should conform in order to protect themselves from injury. Myers, 80 Md. App. at 132-33, 560 A.2d at 63.

In short, if Plaintiff had been struck by Defendant's truck while riding on the shoulder, then he would not be contributory negligent as he was properly riding his bicycle. However, if Plaintiff had briefly moved into the travel lane because of the hazardous roadway condition and then was struck by Defendant, he would still not be contributory negligent as his actions were foreseeable and reasonable to protect himself from injury and were also statutorily permitted. In either event, the evidence reveals that Mr. Carroll had a right to use the shoulder and roadway at issue, and while properly riding his normal routine route, he was subjected to the negligent actions of Defendant Martin. This Court should rule that Mr. Carroll's actions were proper as there exists no evidence or inferences, even in the light most favorable to the non-movant, that Mr. Carroll was contributorily negligent.

WHEREFORE, for the foregoing reasons, Plaintiff, William Carroll, respectfully requests this Honorable Court to grant partial summary judgment on the absence of contributory negligence on the part of Plaintiff. There is no dispute as to any material fact and Plaintiff is entitled to summary judgment as a matter of law.

Respectfully Submitted,

_____/S/_____
Henry L. Belsky
Federal Bar No.: 03161
Schlachman, Belsky & Weiner, P.A.
20 S. Charles Street - 10th Floor
Baltimore, Maryland 21201
(410) 685-2022
Attorneys for Plaintiff