IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| WILLIAM R. CARROLL, et al | * | |
| Plaintiffs | * | Civil Case No. |
| v. | * | MJG-02-CV-2084 |
| BENJAMIN R. MARTIN, et al | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL DEPOSITION RESPONSES
FROM DEFENDANT**

Plaintiff, William Carroll, by his attorneys, Henry L. Belsky and Schlachman, Belsky & Weiner, P.A., submits this Memorandum in Support of Plaintiff's Motion to Compel Deposition Responses from the Defendant.

**FACTS**

On January 16, 2001, at approximately 6:30 a.m., Plaintiff, William R. Carroll (hereinafter "Carroll"), was riding his bicycle on the southbound shoulder of Route 27. At the same time, Defendant, Benjamin J. Martin (hereinafter "Martin"), was driving a white box truck southbound on Route 27 in the course of his employment as a truck driver for Lamtech, Inc. (hereinafter "Lamtech"). After crossing the intersection of Route 27 and Skylark Road, Mr. Carroll, was struck by Defendant's truck.[1]

---

[1]. Although it is understood that the white box truck driven by Defendant did not belong to him personally, but rather was the property of Lamtech., for the purposes of brevity, Plaintiff will refer at times to this vehicle as "Defendant's truck" or "Defendant's vehicle."

At his deposition, Mr. Carroll testified that he routinely rode a hybrid Bianchi Advantage bicycle to work on the shoulder of Route 27.  (See Deposition of William R. Carroll attached hereto as Exhibit A, pp. 8-9, p. 17).  His bicycle was equipped with battery powered headlights on the front and rear, which were both switched on at the time of the accident, and reflective strips attached to the back fender.  (Exhibit A, pp. 11-12, p. 25).  Additionally, Mr. Carroll stated that at the time of the accident, he was wearing an orange safety vest also fitted with reflective strips along with a white plastic helmet. (Exhibit A, p. 24).  Although Mr. Carroll could not remember exactly where he was at the time of impact, he testified that at the time of the accident, "I would have been on the shoulder because I don't ride on the road."  (Exhibit A, pp. 18-19).

Additionally, Raymond Curtis (hereinafter "Curtis"), a witness to this accident, at deposition testified that he normally drove southbound on Route 27 to work.  (See Deposition of Raymond Curtis attached hereto as Exhibit B, p. 4). On the day of this accident, Mr. Curtis was following Defendant's truck when he observed Plaintiff and his bicycle "tumbling" off to the side of the roadway.  (Exhibit B, pp. 9-10)  At this point, the Defendant stopped his truck and pulled over to the side.  Id.  Mr. Curtis further testified that Defendant's truck never changed direction or varied in its lane of travel.  Id.  However, Mr. Curtis also testified that he did not see the point of impact between Defendant's truck and Plaintiff's bicycle.  (Exhibit B, p. 31).

Mr. Curtis also testified that everyday, prior to the accident, he would drive by the location of the accident and could see that the pavement on the shoulder of the site of the accident was crumbled. (Exhibit B, pp. 27-28).  In addition, Mr. Curtis testified that "just about everyday for a number of years" on his drive to work he would observe Plaintiff riding his bicycle with reflectors on the shoulder of

2

Route 27. (Exhibit B, pp. 26-27 and p. 32). On these occasions, when observing Plaintiff riding his bicycle, Mr. Curtis further stated that he never had a problem seeing him. (Exhibit B, p. 26).

On the day and location of the accident, Mr. Curtis observed, on the shoulder extending to the white line dividing the shoulder from the travel lane, an area of patched, crumbled pavement that he believed would have prevented an individual from riding a bicycle through it. (Exhibit B, pp. 16-17). As an avid cyclist himself who had, on numerous occasions traveled on Route 27, Mr. Curtis stated that he would not drive a bicycle over broken pavement, "because you can't keep a bicycle upright driving on broken pavement." (Exhibit B, p. 28). Moreover, when cycling on Route 27 at these broken pavement patches, he would normally drive around them. (Exhibit B, p. 28).

During the Deposition of Defendant Martin, he testified that on the day of the accident he was traveling southbound on Route 27 in the course of his employment as a truck driver. (See Deposition of Benjamin Martin, attached hereto as Exhibit C, p. 18). The Defendant further testified that he did not see Mr. Carroll until the moment of impact and could not identify whether Mr. Carroll was in the shoulder or travel lane of Route 27. The Defendant contended that he, "was looking at the car in front," of his vehicle prior to impact. (Exhibit C, pp. 16-17). The only damage to Defendant Martin's truck, after the accident, was a bent mirror frame attached approximately six to eight inches from the right side door. (Exhibit C, pp. 23-24). To the best of the Defendant's knowledge, this portion of his vehicle was what appeared to strike Mr. Carroll. Id. (Exhibit C, pp. 15-16).

In a police report taken immediately following the accident Defendant Martin admitted liability and had narrated to a police officer that, "he had his eyes off the road for a very short time, and when he looked up, [Mr. Carroll] was at his right front bumper." (See Police Report attached hereto as Exhibit

D). Additionally, as confirmed in Mr. Curtis' deposition, Defendant Martin had made statements to Mr. Curtis immediately following this accident in which he admitted that, "I must have run off the road and hit him." (See Exhibit B, p. 20 and p. 25). Mr. Curtis had observed that at the time Defendant Martin had made these statements, he was in an excited state as he, "was in shock," (Exhibit B, p. 20), and was, "really shaken." (Exhibit B, p. 25).

     Defendant Martin also testified that he notified his supervisor of this incident directly after the accident by telephone. (Exhibit C, p. 9). Representatives from Lamtech then called him and conducted a telephone conference whereby Defendant Martin relayed the events of this incident. Id. Approximately three days later, Defendant Martin was terminated from his employment at Lamtech. (Exhibit C, p. 10).  Defendant Martin also testified that as a consequence of this accident, he had been issued a traffic citation for careless driving. (Exhibit C, p. 12). Instead of proceeding to traffic court, however, Defendant Martin elected to pay the fine outlined in the citation. (Exhibit C, p. 12).

     During his deposition, Defendant Martin stated that he has no knowledge of whether any notes or documents were generated by Lamtech as a result of his telephone conference on the day of the incident. (Exhibit C, pp. 9-10). Thereafter, Plaintiff sought discovery of such information during the deposition of Brent Keener, the corporate designee for Lamtech. This motion arises from an exchange of questions and objections occurring during the deposition of Corporate Designee Keener.

     At his February 5, 2003 deposition, Mr. Keener indicated that at the time of the accident, he was the Vice President of Human Resources at Lemtech, Inc. and oversaw safety administration, and therefore meant that he was in charge of safety. Mr. Keener acknowledged that he had a telephone conversation with Defendant Martin on the date of the accident from his place of employment. (See

transcript of Brent Keener attached as <u>Exhibit E</u>, at page 15, Line 7 through page 20, Line 8).  Upon being questioned as to conversations occurring between Defendant Martin and Mr. Keener on the day of the collision, the following exchange occurred:

> **Question:** Now, can you just take me step by step the actions that was taken by the company to terminate this driver?
>
> **Answer:** Yeah, there was, he had had the first incident about a month or two months after he had been hired where he hit a tree, a tree limb. We deliver, we drive box trucks, we deliver in residential areas, oftentimes townships and municipalities don't trim the trees back as often as well as they maybe should, and so we were willing to overlook that. When he had the second incident and there was some question as to his fault, we made the determination at that point that we did not want him driving trucks anymore. So we began looking around to see if there were other positions in the organization where he could, that he could do and we weren't able to come up with any and so his employment was then subsequently terminated.
>
> **Question:** Okay. Well, did you make a determination of fault?
>
> **Answer :** No.
>
> **Question:** Did you ask him how the accident happened?
>
> **Answer :** Yes.
>
> **Question:** And did he give you a written report?
>
> **Answer:** No.
>
> **Question:** What did he tell you how the accident happened?
>
> > MR. MANN: Objection. I'm going to instruct him not to answer that.
> >
> > MR. BELSKY: And why?
> >
> > MR. MANN: It's a conversation that Mr. Keener had with Mr. Martin and it was for the purposes of this claim, this insurance claim and it's work product discussion between two parties.

**Question:** When did you first consult an attorney in this case?

**Answer:** It wasn't until we found out about the lawsuit.

**Question:** When did you first notify your carrier?

**Answer :** The day of the incident.

**Question:** Was it before or after you talked to Mr. Martin?

**Answer:** I believe it was after.

**Question:** So you spoke to him, Mr. Martin first, then you notified your carrier?

**Answer :** Yes.

>MR. BELSKY: I don't see how you can —

>MR. MANN: Ask him what the purpose of speaking to him was.

**Question**: What was the purpose of speaking to him?

**Answer:** To determine how to file a claim or what to say to the insurance carrier.

**Question:** Okay. And was it also the purpose to find out whether he should be terminated?

**Answer:** No.

>MR. BELSKY: I still don't see that it's privileged.

>MR. MANN: I do.

>MR. BELSKY: Okay, I guess we'll deal with that later.

**Question:** Who was present on that conversation?

**Answer:** Just myself. I talked to him over the phone.

> **Question:** And was that a cell phone?
>
> **Answer:** He was using his cell phone I believe.
>
> **Question:** And did he call you from the scene?
>
> **Answer:** I believe he had called in earlier and, but it was before I got to work and then I found out about it and I called in, called him.

(See <u>Exhibit E</u>, at page 15, Line 7 through page 18, Line 14). Later in this deposition, Mr. Keener was further questioned regarding these conversations prompting a similar exchange as follows:

> **Question:** Mr. Martin had indicated in his deposition that the only damage that he saw was to the mirror. Did he ever offer an explanation to you why the mirror was broken?
>
> **Answer:** He, I believe said it was a result of his accident. It was in our discussion when I talked to him when he had called he said that - - -
>
>> MR. MANN: You answered the question. Objection
>>
>> MR. BELSKY: Are you instructing him not to answer when he called?
>>
>> MR. MANN: He answered the question. He said
>
> **Question:** Okay what else did he tell you when he first called you?
>
>> MR. MANN: Objection for the same reason as stated before.
>>
>> MR. BELSKY: Are you instructing him not to answer?
>>
>> MR. MANN: Yes.
>
> **Question:** This call to you was before you even notified the insurance carrier.
>
> **Answer:** Yes
>
>> MR. BELSKY: Is that still your position?
>>
>> MR. MANN: Yes. He testified it was for the purpose of notifying

7

the insurance carrier.

        MR. BELSKY: Okay.

(See <u>Exhibit E</u> at page 41 Line 5 through page 42 Line 11.)  Accordingly, Defense counsel refused to permit Mr. Keener to testify as to this issue further.

### QUESTION PRESENTED

Whether the Plaintiff is entitled to statements made by the Defendant driver to his employer relative to the happening of an accident prior to the involvement of any insurance carrier or counsel.

### ARGUMENT

**I.    THE PLAINTIFF IS ENTITLED TO STATEMENTS MADE BY THE DEFENDANT DRIVER TO HIS EMPLOYER RELATIVE TO THE HAPPENING OF AN ACCIDENT PRIOR TO THE INVOLVEMENT OF ANY INSURANCE CARRIER OR COUNSEL.**

The Defense seeks to prohibit Plaintiff's discovery of Defendant Martin's statements to his employer during both his initial call reporting the incident and the subsequent conference call in which he described the happening of the collision by claiming that such communications were privileged attorney client communications.  However, to the contrary, the Plaintiff is entitled to discover statements made by the Defendant employee to his Employer prior to any insurance carrier notification or assignment of legal counsel for several reasons.  First, no recognized privilege exists between an employee and his superior which shields their communications in the event of litigation.  Second, a report of a collision made by an subordinate employee to his superior is in the ordinary course of his duties and is not in preparation of litigation.  Third, the statements made by Defendant Martin on the date of the collision are statements by a party in a position to see the location of the vehicles at the time of the impact.  Accordingly, such evidence is a party admission.  Fourth, in light of the Defendant's lack

of recollection at his deposition as to the point of impact, the Plaintiff can not obtain the sought information from any alternative source. Lastly, the Defendant appears to be taking the position that the collision occurred in the travel portion of the road based on the testimony of Mr. Curtis, the witness traveling behind Defendant Martin and thus, seeks to escape liability on a theory of contributory negligence or unavoidable accident. As such, the sought information is relevant and discoverable.

    A.    **Information sought is not protected by attorney client privilege.**

Rule 30 of the Federal Rules of Civil Procedure provides, "A party may take the testimony of any person, including a party, by deposition upon oral examination. . ." Rule 501 of the Federal Rules of Evidence further states,

> Except as otherwise required by the Constitution of the United States or provided by the Acts of Congress or in the rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by a principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid 501. McLean on Evidence also recognizes the following:

> Whether a particular communication or item of information is privileged is a matter for the court to determine, after considering the circumstances under which the information was gained. The burden of persuasion on this matter is shouldered by the party asserting the privilege.

McLain, Maryland Evidence, §503:1, at 40; See also In re Criminal Investigation No. 1/242Q, 326 Md. 1, 11, 602 A.2d 1220, 1225 (1992) (the party asserting the privilege has the burden of proving the privilege.)

Maryland has codified the forms of communications protected under Maryland law as privileged communication. See Md. Ann. Code Cts. and Jud. Proc. §§ 9-105, 9-108, 9-110, 9-111, 9-112. Maryland Annotated Code Courts and Judicial Proceedings Article Section 9-108 provides, "A person may not be compelled to testify in violation of the attorney-client privilege." Accordingly, Maryland recognizes that when either a client or a would be client seeks legal advice of any kind from an attorney acting in the capacity of an attorney, all communications relating to that purpose which are made in confidence are protected from disclosure unless the client waives the protection. Harrison v. State, 276 Md. 122, 135, 345 A.2d 830, 838 (1975); Fraidin v. Weitzman, 93 Md. App. 168, 611 A.2d 1046, 1075 (1992), cert. denied, 329 Md. 109, 617 A.2d 1055 (1993).

The purpose of the attorney client privilege is to encourage complete disclosure of information between a client and an attorney in order to promote effect representation. Levitsky v. Prince George's County, 50 Md. App. 484, 494, 439 A.2d 600 (1982). See State v. Pratt, 284 Md. 516, 520, 398 A.2d 421, 423 (1979) ("[A]n individual in a free society should be encouraged to consult with his attorney whose function is to counsel and advise him and he should be free from apprehension of compelled disclosures by his legal advisor." (Citations omitted.)). Accordingly, the attorney client privilege only applies if (1) the client is seeking legal assistance; (2) the person to whom disclosure is made is an attorney or agent of the attorney necessary for effective representation; (3) the communication relates to matters disclosed in confidence and not for a criminal or fraudulent purpose; and (4) there is no waiver by the client. Harrison, 276 Md. at 132, 345 A.2d at 836; Rubin v. State, 325 Md. 552, 565-66, 602 A.2d 677, 683 (1992); 8 Wigmore, EVIDENCE, §2292 (McNaughton rev. 1961). Furthermore, the attorney client privilege is to be confined to its narrowest possible limits because its effect is to withhold

relevant information from the fact finder. Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership, 100 Md. App. 441, 455-56, 641 A.2d 977, 983-84 (1994); Morris v. State, 4 Md. App. 252, 254-55, 242 A.2d 559 (1968); 8 Wigmore, EVIDENCE, §2291-2292 (McNaughton rev. 1961); United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090 (1974). The Supreme Court of the United States has recognized that the attorney client privilege protects disclosure of information, but not the fact underlying that information. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 685-86 (1981). Furthermore, the communication is privileged only if it relates to a subject matter for which counsel was retained and about which the client provided information in confidence. Payne v. Payne, 33 Md. App. 707, 713, 366 A.2d 405, 409 (1976); Helferstay v. Creamer, 58 Md. App. 263, 279, 473 A.2d 47 (1984).

Contrary to the Defenses contention, the privileges recognized pursuant to Maryland law do not include the extension of the attorney client privilege to communications by an employee reporting an incident to his employer, as occurred in this case. Defense counsel attempts to create such an extension by asserting that it was the intent of the employer to communicate the information to its insurance company in order to more adequately prepare itself for anticipated litigation. However, there is neither statutory nor common law precedent for the extension of the attorney client privilege in this manner.

In Pratt v State, 39 Md. App. 342, 387 A.2d 779 (1978), aff'd, 284 Md. 516, 368 A.2d 421 (1979), the Court found that the attorney client privilege is not confined in its scope to communication made solely between an attorney and client, but also includes communications made to agents employed by the attorney, such as stenographers, secretaries, clerks or any employee necessary for effective operation. However, beyond this recognition of an extension of the privilege to administrative persons, the privilege has not been extended to an agent at least twice removed from the attorney client privilege,

11

as the Defense asserts in this matter. Assuming arguendo the existence of such a privilege, any such privilege would necessarily be confined to the insurance company and its insured, and not to the driver of the vehicle in question, in order to comply with the purposes of such a privilege. Furthermore, it can not be ignored that no attorney client relationship existed at the time of the collision, which is the time of the communication in question.

      The information sought in this matter is not privileged and confidential pursuant to the stated law for several reasons. First, Defendant Martin was not seeking legal assistance when he telephoned his employer and engaged in the telephone conference regarding the incident on the date of the incident. Second, Mr. Keener, the corporate designee who was the supervisor Defendant Martin reported the incident to on the date of the collision, was not an attorney or agent of the attorney. Third, Defendant Martin's communication was not disclosed in confidence. It was merely the reporting of the accident. See Harrison, 276 Md. at 132, 345 A.2d at 836; Rubin v. State, 325 Md. 552, 565-66, 602 A.2d 677, 683 (1992); 8 Wigmore, EVIDENCE, §2292 (McNaughton rev. 1961). As such, Defendant Martin's statements regarding the collision made to his employer are not protected by the attorney client privilege.

      **B.**    **Rules of Evidence mandate disclosure of sought information.**

      The purpose underlying the admission of evidence is, "to secure fairness in administration, eliminate unjustifiable expense and delay, and promote the growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed. R. Evid. 102. Accordingly, in light of this purpose, the rules of evidence permit the admissibility of a party's own statement, as well as a statement by the party's agent or employee made during the agency or

employment relationship concerning a matter within the scope of the agency or employment without requiring the unavailability of the declarant.  See Fed. R. Evid. 801(d)(2).  Furthermore, records of regularly conducted business activities are admissible pursuant to the rules of evidence.  Fed. R. Evid. 803.

In this matter, the Defendant's material statements to his employer were by his own admission, a mere reporting of the incident.  As such, all statements would be admissible as evidence and are clearly discoverable.

> **C.    Information sought must be disclosed pursuant to Defendant's claims of contributory negligence and unavoidable accident.**

Some Courts have held that the party seeking discovery is required to show a substantial need for the information requested.  See Kelch v. Mass Transit Admin., 42 Md. App. 291, 400 A.2d 440 (1979).  Establishing the manner in which an accident happened is undoubtedly a major part in the Plaintiff's burden of proof as to liability.  In this matter, the Plaintiff's injuries have prevented him from recalling the details regarding the point of impact.  (See Exhibit A, pp. 18-19).  Moreover, the Defendant also is not able to recall the point of impact.  (Exhibit C, pp. 16-17).  Mr. Curtis testified that he did not see the moment of impact.  Therefore, the only evidence available to Plaintiff is the statements Defendant Martin made to his employer on the day and location of the accident regarding the circumstances surrounding this incident.  As such, it is apparent that Plaintiff has a substantial need for the sought after information.

Furthermore, it is anticipated that the Defendants will raise the issue of contributory negligence,

assumption of the risk or unavoidable accident. Such defenses mandate disclosure of all evidence as to the manner in which the accident happened in order for Plaintiff to establish a viable response to Defendant's affirmative defenses.

The Defendant was in the best position to see the location of his vehicle with respect to Plaintiff at the point of impact, and the Defendant is also the only person who can explain the reason behind his inability to see the Plaintiff prior to impact. The Defendant's statements pertaining to these issues so close in time after the accident have a significant amount of credibility when adverse to Defendant's position. This is particularly so since the discovery process has revealed that no other witness is able to supply the information being sought.

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests this Honorable Court to compel the Defendant to submit Corporate Designee Keener to a second deposition examination at the Defendant's expense and to compel Mr. Keener to answer Plaintiff's deposition questions pertaining to Defendant Martin's statement to his employer on the date of the collision, as well as to documentation kept by Lamtech regarding Defendant Martin's reporting of the happening of the collision.

    Respectfully Submitted,

    /S/
    Henry L. Belsky
    Federal Bar No.: 03161
    Schlachman, Belsky & Weiner, P.A.
    20 S. Charles St., 10th Floor
    Baltimore, Maryland 21201
    (410) 685-2022
    Attorneys for Plaintiff